UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON

**ROBIN LYNN BAKER,**

    **Plaintiff,**

v.                                                                       **CIVIL ACTION 3:13-cv-20376**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings in a Social Security case (ECF No. 12) and Brief in Support of Defendant's Decision (ECF No. 13).

### Background

Robin Lynn Baker, Claimant, applied for disability insurance benefits (DIB) under Title II and Part A of Title II and Part A of Title XVIII of the Social Security Act on June 11, 2010, alleging disability beginning on June 5, 2010 (Tr. at 181-187). The claim was denied initially on January 19, 2011, and upon reconsideration on April 4, 2011. On April 5, 2011, Claimant made a request for a hearing before an Administrative Law Judge (ALJ) (Tr. at 124). In her request, Claimant stated that she disagreed with the determination made on her claim for disability and that she was disabled due to carpal tunnel in both arms, cellulitis in right leg, breathing problems, back pain and diabetes. Claimant appeared in person and testified at a hearing held in Huntington, West Virginia on December 7, 2011 (Tr. at 75-106). In the Decision dated January 23, 2012, the ALJ determined that Claimant was not disabled under sections 216(i) and 223(d) of the Social Security

Act. On March 28, 2012, Claimant's counsel[1] informally requested a review of the ALJ's decision by writing a letter to the Appeals Council (Tr. at 49-54). On January 18, 2013, the Appeals Council found no reason under its rules to review the ALJ's decision and denied Claimant's request for review (Tr. at 43-48). On March 20, 2013, Claimant's new counsel[2] filed a Motion for Appeals Council to Reconsider the previous Order Denying Review and/or to Grant an Extension of Time for Filing in Federal Court (Tr. at 37-42). On May 5, 2013, Claimant's new counsel filed a Request to be Acknowledged as Council [sic] with Access to Electronic Folder and Extension of Time to File Complaint to USDC (Tr. at 1-20). On June 8, 2013, the Appeals Council extended the time for Claimant to file a civil action (Tr. at 21-26).

On July 13, 2013, Claimant bought the present action requesting this Court to reverse or remand the decision of the Commissioner.

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2013). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.*

---

[1] William L. Redd of the The Redd Law Firm in Huntington, West Virginia.
[2] Rose Cyrus of the law firm of Greiner & Cyrus, L.C., in Huntington, West Virginia.

§ 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2013). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date of June 5, 2010 (Tr. at 60). The ALJ found that Claimant meets the insured status requirements of the Social Security Act through September December 31, 2014. (*Id.*) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative disease of the thoracic and lumbar spine; chronic obstructive pulmonary disease; diabetes mellitus; carpal tunnel syndrome; cellulitis of the right lower extremity; bilateral lower extremity edema; morbid obesity; and depression. (*Id.*) At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1

(Tr. at 61). The ALJ then found that Claimant has a residual functional capacity to perform light work[3] (Tr. at 63). However, due to limitations affecting Claimant's ability to perform the requirements of representative occupations, the Vocational Expert (VE) testified at the hearing that representative occupations at the light and sedentary levels of work could be performed (Tr. at 68) As a result, the ALJ concluded that Claimant could perform jobs such as information clerk, interviewing clerk, inspector and sorter. (*Id.*) On this basis, benefits were denied (Tr. at 68-69).

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

---

[3] The ALJ ordered that Claimant can never climb ladders, ropes or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She can frequently handle, finger and feel with both upper extremities. She must avoid concentrated exposure to extreme cold; extreme heat; excessive vibration; irritants such as fumes, odors, dusts, gases and poor ventilated areas; and hazards such as moving machinery and unprotected heights. She must be allowed to wear corrective lenses at all times. She would need to use supplemental oxygen at all times. She retains the ability to understand, remember and carry out detailed and simple instructions; can respond appropriately to supervisors, coworkers and usual work situations; and can deal with changes in a routine work setting (Tr. at 63).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

### Claimant's Background

Claimant was born on May 19, 1966 (Tr. at 265). She last completed the eleventh grade (Tr. at 79). She has experience working in a bakery (Tr. at 80). At the time of the hearing, Claimant stood at five foot, three inches, and weighed three-hundred and fifty pounds (Tr. at 53).

### The Medical Record

The Court has reviewed all evidence of record and will address those portions which are relevant to the issues raised by Claimant.

### Claimant's Challenges to the Commissioner's Decision

Claimant argues that the ALJ failed to consider the proper listings (ECF No. 12). Claimant asserts that the ALJ should have considered Listing 4.11, Chronic Venous Insufficiency, and Listing 8.04, Chronic Infections. Additionally, Claimant asserts that the ALJ failed to consider all of her limitations in the hypothetical presented to the VE at the hearing, specifically the alleged need to prop her legs up due to the edema (ECF No. 11). In response, Defendant asserts that the ALJ's determination is supported by substantial evidence (ECF No. 13). Defendant asserts that substantial evidence supports the ALJ's finding that Claimant's alleged impairments did not meet or equal under Listings 4.11 and 8.04. Defendant avers that the ALJ was not required to accept the Vocational Expert's (VE) testimony in response to hypothetical questions containing limitations not supported by the evidence.

### Medical Opinions

Dawn Macfarland, M.D., in Huntington, West Virginia, saw Claimant on February 28, 2008, for a "Nerve conduction study performed for evaluation of upper extremity symptoms

(possibly suggestive of carpal tunnel syndrome.)" (Tr. at 553).  On April 4, 2008, Charles M. Siegler, M.D., with Pro-imaging Diagnostics in Huntington, West Virginia, examined Claimant's thoracic spine (Tr. at 555).  Dr. Siegler's interpretation reflected that "There is lateral osteophytosis seen in the mid and lower thoracic spine and minimal anterior osteophytosis is preserved. Alignment is maintained." (*Id.*)

On January 26, 2009, Dr. Macfarland saw Claimant due to strep (Tr. at 342).  Dr. Macfarland's notes reflect that Claimant complained of nausea, headache and lower back pain that extended to her hips and legs on both her right and left sides.  She recommended an MRI of Claimant's back.  On March 4, 2009, Claimant was seen for a urinary tract infection, strep throat and migraine headache (Tr. at 341).  The edema of her legs was better due to treatment with lasix. (*Id.*)  On June 16, 2009, Dr. Macfarland ordered an ultrasound of Claimant's right lower quadrant (Tr. at 355).  Dr. Macfarland's interpretation reported "Normal flow is identified within the popliteal vein.  There is no evidence of abnormal soft tissue mass or fluid collection.  There is no evidence for popliteal cyst." (*Id.*)

On July 11, 2009, Claimant was treated by Joseph Justice, DO, for left knee pain after a fall (Tr. at 293).  However, her Radiology Report on July 13, 2009, states that an X-ray was taken of her right knee due to right knee pain (Tr. at 296).  On July 23, 2009, Dr. Macfarland saw Claimant for a follow-up exam (Tr. at 340).  She reported that she went to Urgent Care for right knee pain and an x-ray of her knee showed arthritis.  She said that she took steroids for 3 days but she was still experiencing a lot of pain. (*Id.*)

On October 6, 2009, Claimant was examined by state agency physician, Kip Beard, M.D., for the West Virginia Disability Determination Service. Dr. Beard conducted an Internal Medicine Examination (Tr. at 299-303).  Claimant's chief complaints were allegations of back pain and

shortness of breath (Tr. at 299). Claimant reported difficulty in breathing increasing over the prior year. Dr. Beard's physical examination reported that Claimant did not use or need an ambulatory aid (Tr. at 301). Her gait was normal. Dr. Beard reported that Claimant "could arise from a seat and step up and down the examination table without difficulty." Claimant wore an oxygen tank during the examination. Claimant's extremities revealed some trace pretibial edema. (Id.) An examination of Claimant's cervical spine revealed "no spinous process or muscular tenderness. There is no evidence of paravertebral muscular spasm. Elevation of range of motion revealed no limitations" (Tr. at 302). Dr. Beard examined Claimant's dorsolumbar spine and reported "complaints of some mild pain on forward bending with tenderness." Claimant was not experiencing pain or tenderness and was at normal range of motion. Claimant was able to stand on one leg alone.

Claimant's Brief asserts the following statement of facts:

> On June 10, 2010 she was seen for swollen right calf muscle. She was prescribed antibiotics and to keep her legs elevated. Dr. Mac Farland stated that the claimant had not worked for last three days due to pain/swelling. According the treatment notes the claimant could hardly stand on her legs at work. She was getting depressed and had cut her hours to about 18 hours a week which did not allow her to pay her bills. Dr. MacFarland diagnosed cellulitis, diabetes, lower extremity edema and oxygen dependent COPD. (TR 338)
>
> On June 24, 2010 she was seen with her right leg still swollen, red and painful. She was unable to work due to pain. She recommended to use warm compresses, elevate legs and to be off work for a week. (TR 337) Seen again on August 4, 2010 with bilateral leg pain and knee pain. Her knees down to her legs hurt all the time. Her legs ached and acted like they were going to give out on her. She was referred to lymphedema clinic for 2+ bilateral pitting edema. She was referred to SMMC. (TR 336)
>
> On August 5, 2010 she was admitted to Saint Mary's Medical Center with marked lower extremity edema which impaired mobility. Her primary care doctor had placed her on lasix for progressive edema. Her impairmed [sic] mobility was attributed to

7

> her marked lower extremity edema and morbid obesity. (TR 317) On examination it was reported she had erythema secondary to venous congestion but no ulceration at that time. (TR 318).
>
> A mild degree of dyspnea was noted following exertion (TR 303).
>
> On August 31, 2010 Dr. MacFarland stated she saw the claimant again for cellulitis with open sores and pain in the back of right leg. (TR 335)
>
> On September 8, 2010 she was seen again with her right calf had a red area of approximately 8" x 6" pea sized open sores. Wet dry dressings were recommended. The leg was reported not to have improved. The doctor thought she should be off work for 1 more week. The doctor recommended she keep her leg elevated. The cellulitis was stated to be improving. Lower extremity edema was still noted. (TR 334) Five days later Dr. MacFarland noted a recheck of pea sized open wound. The red area was described a [sic] approximately 4" x 6". (TR 333)
>
> She was seen a second time by Dr. Beard on October 13, 2010. He described her as having difficulty arisng [sic] from a seat and stepping up and down from the examination table. She was uncomfortable while supine. Her gait was laterally locking and cumberson [sic] in relation to body habitus. Her weight, Dr. Beard noted exceeded 350 lbs on their scales. (TR 360)
>
> [Dr. Beard] noted diminished breath sounds in the basis and some exertional dyspnea. He found tense 1+ bilateral pitting lower extremity edema. She had skin induration and some visible redness about both lower shins and some mild palpable warmth about both lower shins. She has bandages on the posterior right leg. Distal pulses were difficult to palpate due to swelling that extends to the feet. (TR 361) She had difficulty heel walking, toe walking and had difficulty approximating the legs to try to tandem walk and could not squat. (TR 362) He concluded that her medical condition was worse than on his first examination of the claimant (TR 363).
> (ECF No. 12).

Dr. Macfarland's notes from a follow-up exam with Claimant on November 17, 2011, reflect that she had a hearing scheduled for December 7, 2011 (Tr. at 542). On November 30, 2011, Dr. Macfarland completed a "Medical statement regarding chronic venous insufficiency for Social Security disability claim" form (Tr. at 549-550). The form stated that Claimant has the following limitations and abilities: she can work 1 hour per day; she can stand at one time for a

length of 15 minutes; she can stand 1 hour in an 8-hour workday; she has the ability to walk occasionally on the job; she can sit at one time for a length of 30 minutes; and she needs to elevate her legs during the work day "most of the time" (Tr. at 549).

<u>Listings 4.11, Chronic venous insufficiency, and 8.04, chronic infections</u>

In response to Claimant's assertion that the ALJ failed to consider Listings for chronic venous insufficiency and chronic infections, Defendant argues the following:

> The listings are a regulatory device used to streamline the decision-making process by identifying those claimants whose medical impairments are so severe that they would be found disabled regardless of their vocational background. 20 C.F.R. § 404.1525(a); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citations omitted). The medical criteria defining the listed impairments are appropriately set at a higher level than the statutory standard for disability. *Zebley*, 493 U.S. at 528-32. To be found presumptively disabled, a claimant must show that all of the criteria for a listing have been met. 20 C.F.R. § 404.1525(c)(3); *Zebley*, 493 U.S. at 530. Meeting or equaling a listing cannot be based simply on a claimant's testimony or speculation. An impairment that meets only some of the criteria for a listed impairment, "no matter how severely, does not qualify." *Id.* It is always a claimant's burden to present evidence that an impairment or combination of impairments meets or equals a listed impairment by presenting medical findings either meeting *all* of the criteria of a listed impairment or equal in severity to all the criteria for the one most similar listed impairment. 20 C.F.R. § 404.1526; *Zebley*, 493 U.S. at 531.
>
> Plaintiff asserts, without legally sufficient explanation, that the ALJ erred by not considering her impairments under Listing 4.11, pertaining to Chronic Venous Insufficiency, and Listing 8.04, pertaining to chronic skin infections. Plaintiff's argument is without merit—and waived—because Plaintiff has failed to provide supporting medical evidence demonstrating that she met the specific requirements of any particular listing (Pl.'s Br. at 7-8*).* *See Laborers Int'l Union of North America, AFL-CIO v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it . . . and . . . 'a passing reference to an issue . . . will not suffice to bring that issue before this court.'") (citing *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1066 (3d Cir. 1991)); *McConnell v. Astrue*, 2010 WL 2925053, at *5 (W.D. Pa. July 20, 2010) (deeming McConnell's "superficial" listings argument waived, stating "McConnell makes no attempt to explain the precise

9

basis for his belief that his impairments equaled Listings 12.04 and 12.06. . . . He makes no direct reference to the specific criteria enumerated in Listings 12.04 and 12.06.") (citing *Grimaldo v. Reno*, 189 F.R.D. 617,619 (D. Colo. 1999)) (*Newton v. Astrue*, 559 F.Supp.2d 662, 670-71 (E.D.N.C. 2008) ("Claimant has not briefed this issue nor has she presented it to the Court with any supporting discussion, argument, or authority.") (citing *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 36 (1st Cir. 1994) ("[I]ssues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived for purposes of appeal.")).

Although Plaintiff refers to the opinion of Dawn McFarland, M.D., in support of her argument that she met Listing 4.11, as the ALJ explained, this opinion was entitled to little weight because it was inconsistent with the objective evidence of record (Tr. 67, 549-550). 20 C.F.R. § 404.1527(c)(3)-(4); *see Hines v. Barnhart*, 453 F.3d 559, 563 n.2 (4th Cir. 2006) ("The treating physician rule is not absolute. An 'ALJ' may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence."); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) ("Circuit precedent does not require that a treating physician's testimony be given controlling weight. In fact, 20 C.F.R. §§ 404.1527[(c)](2) & 416.927[(c)](2) both provide, . . . [b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.") (quotations and additional citations omitted). The record shows that Plaintiff was conservatively treated for lower extremity edema, receiving medication and lymphedema therapy (Tr. 65-66, 317-19, 399-470, 541-42).

Additionally, Plaintiff selectively described the requirements of Listing 4.11, which, in full, states that a claimant must demonstrate "Extensive brawny edema (see 4.00G3) involving at least two-thirds of the leg between the ankle and knee or the distal one-third of the lower extremity between the ankle and hip" or "Superficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment." 20 C.F.R. part 404, subpt. P., app. 1 § 4.11. Brawny edema is defined as "is swelling that is usually dense and feels firm due to the presence of increased connective tissue; it is also associated with characteristic skin pigmentation changes. It is not the same thing as pitting edema. Brawny edema generally does not pit (indent on pressure), and the terms are not interchangeable. Pitting edema does not satisfy the requirements of 4.11A." 20 C.F.R. part 404, subpt. P, app. 1 § 4.00G3. Here, Plaintiff demonstrated pitting edema during her consultative examination with Kip Beard, M.D. (Tr. 361).

>Accordingly, she does not have medical findings that satisfy the Listing.
>
>Because Plaintiff has failed to point to any objective evidence demonstrating that she had a listing-level impairment, her argument that the ALJ failed to consider these particular impairments must fail. It is not enough for Plaintiff to point out a perceived error. Rather, it is her burden to prove that the alleged error caused her harm in that it creates a reasonable possibility the decision would have been different absent the alleged error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an [alleged] error is harmful normally falls upon the party attacking the agency's determination"). No principle of administrative law 'requires that we convert judicial review of agency action into a ping-pong game' in search of the perfect decision." *Coy v. Astrue*, 2009 WL 2043491, at *14 (W.D. Pa. July 8, 2009) (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)). A court should affirm the Commissioner's decision, even where there is error, if there is "no question that he would have reached the same result notwithstanding his initial error." *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994); *Ward v. Commissioner*, 211 F.3d 652, 656 (1st Cir. 2000) (remand to correct an error is not necessary if "it will amount to no more than an empty exercise"). (ECF No. 13).

In the present matter, Claimant has not briefed the issue of meeting criteria for Listings 4.11 and 8.04, nor has she presented it to the Court with any supporting discussion, argument, or authority. The full extent of Claimant's assertion is stating in her pleading that the ALJ should have considered Listings 4.11 and 8.04 (ECF No. 12). Claimant lists the requirements for Listing 4.11, but does not discuss how the present facts satisfy the requirements. More so, Claimant does not list the requirements for Listing 8.04 or propose how the facts satisfy the requirements.

This Court proposes that the presiding District Judge find that Claimant failed to present enough objective evidence to meet her burden of establishing that the requirements for Listings 4.11 and 8.04 were met.

<u>Vocational Expert</u>

At the hearing on December 7, 2011, the VE testified that Claimant's work experience as a bakery clerk is classified as light semi-skilled (Tr. at 101). The VE testified that her work

experiences as assistant manager is classified as light skilled. (*Id.*) Her experience as a housekeeper at Marshall University, in the dormitories, is classified as light unskilled. The ALJ asked the VE:

> If we assumed a hypothetical individual of the claimant's age, education and work experience, who is limited to light work; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch and crawl; can frequently handle, finger and feel with both upper extremities; must avoid concentrated exposure to extreme cold, extreme heat, excessive vibration, irritants such as fumes, odors, dust, gases and poorly ventilated areas; and hazards such as moving machinery and unprotected heights; the individual must be allowed to wear corrective lenses at all times; and retains the ability to understand, remember and carry out detailed and simple instructions; can respond appropriately to supervisors, coworkers and usual work situations; and can deal with changes in a routine work setting…can an individual with those limitations perform any of the claimant's past work? (Tr. at 101-102). The VE answered no (Tr. at 102). The ALJ asked the VE is there are other unskilled jobs that such an individual could perform. The VE answered yes, at the light and sedentary levels. (*Id.*) The VE testified that examples of the light level would be routing clerk and price marker. At the sedentary level, the VE gave examples of inspector and sorter. (Tr. at 103).

The ALJ directed the VE to consider the first hypothetical and assume the individual would need to use supplemental oxygen at all times then asked if the jobs previously stated would be affected. The VE testified stated that the sedentary jobs of inspector and sorter would be more amenable to that individual. The VE testified that the light jobs would be more difficult for such a person to perform, however, if a job were stationary, some light jobs would fit within those parameters. As examples the VE provided jobs as an information clerk and interviewing clerk. (*Id.*) The ALJ then instructed the VE to consider those first two hypotheticals and additionally assume that the individual would have to elevate his/her legs while seated at least 50% of the work day. The ALJ stated the individual could stand, walk and sit, but when seated, the individual would

have to be able to elevate his/her legs 50% of the time (Tr. at 103-104). The VE testified that there wouldn't be any jobs that the individual could maintain with that limitation (Tr. at 104).

The ALJ asked the VE to consider a hypothetical individual who during an eight-hour day can only stand for a total of one hour, for 15 minutes at a time; can occasionally walk on the job; can only sit for 30 minutes at a time, and would need to elevate his/her legs during the workday most of the time. The VE testified that there are no jobs such an individual can perform. (*Id.*)

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. *Walker v. Bowen*, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities -- presumably, he must study the evidence of record to reach the necessary level of familiarity." *Id.* at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. *Benenate v. Schweiker*, 719 F.2d 291, 292 (8th Cir. 1983).

The Fourth Circuit has held, "We recognize that not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids." *Grant v. Schweiker*, 699 F.2d 189 (4th Cir. 1983). The proper inquiry under *Grant* is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable.

Claimant asserts that:

> The ALJ's hypothetical does not consider all of the limitations reasonably supported by the medical evidence. The RFC the ALJ arrived at was:
>
> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; balance, stoop, kneel, crouch, and crawl. She can frequently handle, finger and feel with both upper extremities. She must avoid concentrated exposure to extreme could [sic], extreme heat, excessive vibration, irritants such as fumes, odors, dust, gases, and poorly ventilated areas; and hazards such as moving machinery and unprotected heights. She would need to use corrective lenses at all time [sic]. She would need to use supplemental oxygen at all times. She retains the ability to understand, remember, carry out detailed and simple instructions; can respond appropriately to supervisors, coworkers, and usual work situations; and can deal with changes in a routine work setting. (TR 63)
>
> …
>
> The ALJ did not address why he did not add the need to prop her legs up to the hypothetical question. He did state that he did not accept Dr. MacFarland's opinion evidence as he felt the limits were "accessive [sic] and inconsistent with the objective evidence of record. . . ." (TR 67) However it is not necessary that the ALJ accept all of the limitations. The significant limitation is that she needs to prop her legs up for a portion of the work day. (ECF No. 12).

In response, Defendant argues the following:

> In making a disability determination, the ALJ considers the degree of any resulting functional limitations in making a disability determination, not the mere presence or diagnosis of an impairment. See 20 C.F.R. § 404.1521; *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss."); *Gotshaw v. Ribicoff*, 307 F.2d 840, 844 (4th Cir. 1962) ("[T]he mere presence of a disease or medically determinable impairment does not automatically entitle a claimant to a disability period or disability insurance benefits under the [Act]."). And, an individual is not required to be pain-free or experiencing no discomfort in order to be found not disabled. *See Hays v. Sullivan*, 907 F.2d 1453, 1458 (4th Cir. 1990).

The hypothetical question presented to the VE need only include limitations supported by the record. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (concluding that an ALJ's hypothetical question need only include those impairments supported by the record); *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005) (a hypothetical question is unimpeachable if it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence). *See also Craigie v. Bowen*, 835 F.2d 56, 57-58 (3d Cir. 1987) (holding that an ALJ is not required to credit VE testimony elicited in response to a hypothetical question that includes limitations the ALJ finds not to be credible).

In this case, the ALJ properly did not accept the VE's testimony about limitations not deemed to be credibly-established, such as the need to prop up her legs at least 50% of the workday (Tr. 103-04). Although Plaintiff cites a medical text indicating that some individuals with edema benefit from elevating their legs (Pl.'s Br. at 10), this does not constitute objective medical evidence establishing that Plaintiff needed to prop up her legs for more than 50% of the workday. Nothing in Dr. McFarland's treatment records or Dr. Beard's examination reports indicated that Plaintiff required such an ongoing limitation after an acute exacerbation of her symptoms in September 2010 (Tr. 332-57, 358-63, 393-97, 399-414, 470, 541-42). Furthermore, the reviewing state agency physicians did not opine that any such limitation was required by Plaintiff's alleged impairments, and the ALJ found these opinions to be consistent with the evidence of record (Tr. 67, 364-72, 382, 471). *See* 20 C.F.R. § 404.1527(e)(2)(i) (an ALJ is entitled to rely upon and must consider as opinion evidence professional assessments from state agency physicians because they are highly qualified experts in disability evaluation); *Mitchell v. Astrue*, 2009 WL 4823862, at *7 (E.D. Va. Dec. 11, 2009) (noting that state agency medical and psychological consultants are experts in social security disability evaluation).

It is always Plaintiff's burden to present evidence of her disability. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. §§ 404.1512(a), .1516 (generally setting forth a claimant's burden to produce evidence of a disabling impairment and the Agency's right to deny a claim for lack of evidence); *Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). Plaintiff has failed to carry her burden to prove that she had functional limitations affecting her ability to work beyond those included in the RFC assessment by the ALJ. 20 C.F.R. §§ 404.1512, .1520(a), .1521. Significantly, the ALJ did not find that Plaintiff had no limitations due to her impairments. The ALJ accounted for

>all of Plaintiff's credibly-established limitations in the RFC assessment. The RFC assessment precluded Plaintiff's performance of her past relevant work; however, the vocational expert still identified representative jobs that an individual with Plaintiff's vocational profile and RFC could perform (Tr. 102-03). Accordingly, substantial evidence supports the ALJ's decision that Plaintiff was not disabled. (ECF No. 13).

The RFC, and by extension, any hypothetical question relied upon, need only reflect those limitations that are credibly established by the record. *See Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. Feb. 7, 2003) (citing *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *Youkers v. Colvin*, 2014 WL 906484, at *11 (S.D. W.Va. Mar. 7, 2014); *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (holding that hypotheticals to VEs need not credit every symptom alleged by the claimant, only those that are "medically established"); *Jones v. Barnhart*, 364 F.3d 501, 506-07 (3d Cir. 2004) (holding that, while ALJs may pose multiple hypotheticals, they need only credit those that are consistent with the evidence of record). The ALJ is not required to adopt VE testimony in response to limitations that are not supported by the record. *Youkers*, 2014 WL 906484 at *11. *See also Parker v. Colvin*, 2013 WL 4748409 (W.D.N.C. Sept.4, 2013) ("[T]he fact that the Vocational Expert ("VE") responded to a hypothetical posed . . . which was not consistent with the ALJ's RFC determination is of no consequence.").

The ALJ reasonably found that based on the testimony of the VE, Claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Accordingly, this Court recommends proposes that the presiding District Judge find that ALJ's decision is supported by substantial evidence.

<u>Conclusion</u>

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **AFFIRM** the final decision of the Commissioner, **DENY** Plaintiff's Brief

in Support of Judgment on the Pleadings (ECF No. 12), and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Chambers and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:   September 8, 2015

Dwane L. Tinsley
United States Magistrate Judge